UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF TENNESSEE

NASHVILLE DIVISION

| | | |
|---|---|---|
| CITY OF PONTIAC POLICE AND FIRE RETIREMENT SYSTEM, Derivatively on Behalf of TRACTOR SUPPLY COMPANY,<br><br>Plaintiff,<br><br>vs.<br><br>CYNTHIA T. JAMISON, THOMAS A. KINGSBURY, RICARDO CARDENAS, RAMKUMAR KRISHNAN, EDNA K. MORRIS, GEORGE F. MACKENZIE JR., DENISE L. JACKSON, MARK J. WEIKEL, HARRY A. LAWTON III, PETER D. BEWLEY and GREGORY A. SANDFORT,<br><br>Defendants,<br><br>– and –<br><br>TRACTOR SUPPLY COMPANY, a Delaware corporation,<br><br>Nominal Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action No.<br><br>VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS, BREACH OF FIDUCIARY DUTY AND UNJUST ENRICHMENT<br><br><br><br><br><br><br><br><br><br><br><br><br><br>DEMAND FOR JURY TRIAL |

**INTRODUCTION**

1.       This is a shareholder derivative action on behalf of Tractor Supply Company ("Tractor Supply" or the "Company") against its Board of Directors and Chief Executive Officer ("CEO") for violations of the federal securities laws, breach of fiduciary duty, and unjust enrichment.  The current and former members of Tractor Supply's Board of Directors named herein as defendants are Cynthia T. Jamison, Thomas A. Kingsbury, Ricardo Cardenas, Ramkumar Krishnan, Edna K. Morris, George F. MacKenzie Jr., Denise L. Jackson, Mark J. Weikel, Harry A. Lawton III, Peter D. Bewley, and Gregory A. Sandfort (together, "Defendants").

2.       For the past several years, Defendants have publicly (and repeatedly) represented Tractor Supply as a company that effectively promotes diversity throughout its ranks, including in the boardroom.  Defendants similarly have represented that, "'[a]s board members,'" they are "'champions for diversity and equality.'"[1]

3.       Yet, in 2020, no African American women or men serve on Tractor Supply's Board of Directors ("Board"), nor have they for at least five years.  Likewise, no African American holds an executive management position at the Company.  Although each of the Defendants was aware of this reality, they repeatedly represented "it is important that the Board members represent diverse viewpoints" and, therefore, "[t]he Corporate Governance Committee is committed to actively seeking highly qualified women and individuals from minority groups to include in the pool from which Board nominees are selected."  Tractor Supply, Proxy Statement (Sch. 14A) (Mar. 23, 2020) ("2020 Proxy Statement") at 18.

4.       At nearly every opportunity, Tractor Supply publicly asserts its commitment to diversity and inclusion at every level of the Company and emphasizes that "[d]iversity and inclusion

---

[1]       Press Release, Tractor Supply, *Tractor Supply Issues Inaugural Environmental, Social and Governance (ESG) Report* (June 25, 2020) (quoting Cynthia T. Jamison).

play a key role in moving our business forward." *Diversity and Inclusion Statement*, Tractor Supply,

https://corporate.tractorsupply.com/ESG/diversity-and-inclusion/default.aspx (last visited Sept. 15,

2020). For example, Defendants caused Tractor Supply to represent:

- "The Board of Directors of Tractor Supply Company is committed to the principles of diversity and inclusion. We have built a strong and diverse Board of Directors by purposefully seeking highly qualified diverse candidates with different backgrounds, perspectives, ideas and skill sets." 2020 Proxy Statement at 19.

- "Diversity and inclusion are values ingrained in our culture and essential to our business. We believe that a board comprised of directors with diverse backgrounds, unique skill sets and experiences, and individual perspectives improves the discussions and decision-making process which contributes to overall Board effectiveness." *Id*. at 6.

- "We believe that a diverse and inclusive workplace will enhance our ability to attract and retain the best talent to better serve our customers." *Id*. at 19.

- "'We are committed to providing a diverse and inclusive culture where we foster different perspectives, ideas and innovative thinking. One of our values is respect – the starting point for our diversity and inclusion efforts.'" *Diversity and Inclusion Statement*, Tractor Supply, https://corporate.tractorsupply.com/ESG/diversity-and-inclusion/default.aspx (last visited Sept. 15, 2020) (quoting Harry A. Lawton III, President and CEO).

- "We are committed to providing a diverse and inclusive culture supported by our Mission & Values where we respectfully foster different perspectives, ideas and innovative thinking." *Diversity and Inclusion Statement*, Tractor Supply, https://corporate.tractorsupply.com/ESG/diversity-and-inclusion/default.aspx (last visited Sept. 15, 2020).

- "Diversity and inclusion are the backbone of a vibrant workforce and essential to our success." *Id*.

5. Corporate platitudes do not equate to satisfying Tractor Supply's public commitment

to diversity. To the contrary, Tractor Supply is one of the few remaining large publicly traded

companies without a single male or female African American director, despite Defendants' pledge to

"actively seek[] highly qualified women and individuals from minority groups to include in the pool

from which Board nominees are selected" for nomination to Tractor Supply's Board. 2020 Proxy

Statement at 18; Tractor Supply, Proxy Statement (Sch. 14A) (Mar. 25, 2019) ("2019 Proxy Statement") at 16. The following are the members of the 2020 Tractor Supply Board:



6. Most of Corporate America has made gains in the effort to obtain the benefits of racial diversity, including at the executive level. Not Tractor Supply. In 2020, its 11-person

executive management team pictured below did not include a single African American man or woman:



7.  Tractor Supply has failed to include African American representation on its Board for years, while repeatedly, publicly affirming the Company's commitment to diversity. "Diversity and inclusion play a key role in moving our business forward." *Diversity and Inclusion Statement*,

Tractor Supply, https://corporate.tractorsupply.com/ESG/diversity-and-inclusion/default.aspx (last visited Sept. 15, 2020). "Diversity and inclusion are values ingrained in our culture and essential to our business." 2020 Proxy Statement at 6. "The Board and the Corporate Governance Committee believe that it is important that directors represent diverse viewpoints and individual perspectives." 2019 Proxy Statement at 4. And "[t]he Board of Directors of Tractor Supply Company is committed to the principles of diversity and inclusion." 2020 Proxy Statement at 19.

8.     Public statements aside, Defendants are not committed to nor have they promoted racial diversity. Rather than address these issues head-on – by adding African American women and/or men to Tractor Supply's Board – Defendants have opted to cause the Company to issue platitudes. While Tractor Supply's publicly facing communications state that the Company has a myriad of initiatives and programs underway designed to improve diversity at Tractor Supply, Defendants have declined to increase diversity at Tractor Supply.

9.     As a result, and despite the Tractor Supply Board members' curated image as "'champions of diversity,'" who seek highly qualified director candidates from "minority groups," Tractor Supply remains one of the few large companies in the United States without a single African American on its Board. Press Release, Tractor Supply, *Tractor Supply Issues Inaugural Environmental, Social and Governance (ESG) Report* (June 25, 2020) (quoting Cynthia T. Jamison); *Diversity and Inclusion Statement*, Tractor Supply, https://corporate.tractorsupply.com/ESG/diversity-and-inclusion/default.aspx (last visited Sept. 15, 2020); 2020 Proxy Statement at 18

10.     A shortage of African American candidates to serve on Tractor Supply's Board cannot be the answer to Defendants' failure to live up to the Company's professed diversity commitment. *See* Sara Ashley O'Brien, *He's served on 14 boards. Now he wants companies to find*

*other Black candidates*, CNN Business (July 24, 2020), https://www.cnn.com/2020/07/24/tech/barry-lawson-williams-black-board-representation/index.html; Jessica Guynn, *Why are there still so few Black executives in America?*, USAToday (Aug. 20, 2020), https://www.usatoday.com/in-depth/money/business/2020/08/20/racism-black-america-corporate-america-facebook-apple-netflix-nike-diversity/5557003002/.

11.     In May 2020, a McKinsey & Company ("McKinsey") report concluded that "[t]he business case for inclusion and diversity (I&D) is stronger than ever," finding that "companies in the top quartile outperformed those in the fourth by 36 percent in terms of profitability in 2019." Vivian Hunt, Sara Prince, Sundiatu Dixon-Fyle & Kevin Dolan, *Diversity wins:  How inclusion matters*, McKinsey & Company, at 3-4 (May 2020) ("*Diversity wins*"), https://www.mckinsey.com/featured-insights/diversity-and-inclusion/diversity-wins-how-inclusion-matters. McKinsey also found that, "[f]or diverse companies, the likelihood of outperforming industry peers on profitability has increased over time, while the penalties are getting steeper for those lacking diversity." *Id*. at 3.

12.     Tractor Supply Board members have certain legal obligations and responsibilities to the Company and its shareholders – including the fiduciary duty to be truthful and honest and to act consistent with Tractor Supply's public representations about the Company's policies and procedures. Defendants have failed to comply with these obligations. As a result, Tractor Supply has been damaged by the Defendants' conscious, continuing failure to actually do what they have repeatedly told shareholders they would do – embrace diversity throughout Tractor Supply's corporate enterprise. By this action, plaintiff seeks to remedy Defendants' dereliction of their legal duty to act in the best interests of Tractor Supply and remove the institutional structures preventing the Company from fulfilling its stated diversity objectives.

13. Actions speak louder than words. Defendants' actions – declining to nominate a single African American to the Tractor Supply Board over the past several years, despite up 45 opportunities for certain Defendants to do so – belie the veracity of their stated support for diversity, including in Tractor Supply's boardroom. This is, in part, why a pre-suit demand is excused in this case.

14. Discussions of race and/or false statements regarding race can have a pronounced chilling effect. This chilling effect can be even more acute in a homogenous corporate boardroom among colleagues of professional distinction, even evoking a "there but for the grace of God go I" empathy among the directors.

15. In this context, a director implicated in making allegedly false or misleading statements about efforts to achieve a racially diverse board is left in a quandary. Especially after publicly expressing support for seeking "individuals from minority groups to include in the pool from which Board nominees are selected" for nomination to Tractor Supply's Board without success, as is alleged here. 2020 Proxy Statement at 18; 2019 Proxy Statement at 16. The cultural, legal and sociological risk calculus is dramatic. None of these risks is easily reconciled by a director enveloped in them without exposure to potential injury, measured not just in money, but in social and reputational capital as well.

16. A person of reasonable capacity and skill is not disinterested or otherwise detached from the outcome of such an inquiry. The stakes are too high; and the risk of "cancellation" to a director for actual or perceived hostility towards people of color is all too real.[2]

---

[2]     *See, e.g.*, Jemima McEvoy, *Every CEO And Leader That Stepped Down Since Black Lives Matter Protests Began*, Forbes (July 1, 2020), https://www.forbes.com/sites/jemimamcevoy/2020/07/01/every-ceo-and-leader-that-stepped-down-since-black-lives-matter-protests-began/#52e880555593; Andrew J. Hawkins, *Uber senior executive resigns after racial discrimination allegations*, The Verge (July 11, 2018),

17.     A decision to act upon a pre-suit demand commences a potentially stigmatizing inquiry into a director, one that could expose the falsity of the director's publicly stated diversity objectives or question the director's fair treatment of African American director candidates. A decision to reject a pre-suit demand could result in equally dire consequences for a director. At one end of the spectrum, the public could view the director's previous statements supporting diversity as disingenuous and, therefore, false. Or worse yet, that director could be perceived by the public as hostile to African Americans, and, in the future, could be socially shunned. Hence, a pre-suit demand on the Tractor Supply Board is excused as futile.

18.     A pre-suit demand is also excused because Defendants chose to make, and caused the Company to make, false or misleading statements about diversity and their effort to achieve a diverse board of directors. Although Defendants could have nominated African American women and/or men to the Tractor Supply Board at any point during the last five years, they declined to do so, notwithstanding dozens of opportunities – up to 45 in total. Defendants' actions, over an extended period of time, therefore, belie Tractor Supply's public statements about creating a diverse Board. A lack of candor is a breach of a director's fiduciary duty. As such, a pre-suit demand on the Tractor Supply Board is futile.

## JURISDICTION AND VENUE

19.     This Court has jurisdiction under 28 U.S.C. §1331 because the claims asserted herein arise under §14(a) of the Securities Exchange Act of 1934 (the "Exchange Act"). This Court has

---

https://www.theverge.com/2018/7/11/17561336/uber-senior-executive-resigns-racial-discrimination-allegations; Sarah Whitten & Yen Nee Lee, *Papa John's founder John Schnatter resigns as chairman after apologizing for N-word comment, shares surge*, CNBC (July 12, 2018), https://www.cnbc.com/2018/07/10/papa-johns-founder-john-schnatter-resigns-as-chairman-of-company-boar.html; Rachel Ranosa, *CEO fired over alleged racism against Uber driver*, Human Resources Director (Feb. 11, 2020), https://www.hcamag.com/us/news/general/ceo-fired-over-alleged-racism-against-uber-driver/213275.

exclusive subject matter jurisdiction over the federal securities law claims under §27 of the Exchange Act (15 U.S.C. §78aa) and supplemental jurisdiction over the state law claims asserted herein under 28 U.S.C. §1367.

20.     This Court has jurisdiction over each defendant because each defendant is either a corporation that conducts business in and maintains operations in this District, or is an individual who has sufficient minimum contacts with this District so as to render the exercise of jurisdiction by the District courts permissible under traditional notions of fair play and substantial justice.

21.     Venue is proper in this Court under 28 U.S.C. §1391(a) because: (i) Tractor Supply maintains its operating headquarters in this District; (ii) one or more of the Defendants either resides in or maintains executive offices in this District; (iii) a substantial portion of the transactions and wrongs complained of herein, including Defendants' primary participation in the wrongful acts detailed herein, occurred in this District; and (iv) Defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

**PARTIES**

22.     Plaintiff City of Pontiac Police and Fire Retirement System is and continuously has been a shareholder of Tractor Supply since July 2017.

23.     Nominal party Tractor Supply Company is a Delaware corporation with its principal offices located at 5401 Virginia Way, Brentwood TN 37027.

24.     Defendant Cynthia T. Jamison ("Jamison") has served as a director of Tractor Supply since 2002 and as Chairman of the Board since 2014. In 2019, Jamison received at least $370,442 in fees and other compensation while failing to act in the best interests of Tractor Supply and its shareholders. Jamison publicly misrepresented Tractor Supply as a company that effectively promotes diversity throughout its ranks, including in the boardroom, when, in fact, it does not.

25.    Defendant Thomas A. Kingsbury ("Kingsbury") has served as a director of Tractor Supply since 2017.  He also has served on the Corporate Governance and Nominating and Compensation Committees of the Tractor Supply Board.  In 2019, Kingsbury received at least $244,954 in fees and other compensation while failing to act in the best interests of Tractor Supply and its shareholders.  Kingsbury publicly misrepresented Tractor Supply as a company that effectively promotes diversity throughout its ranks, including in the boardroom, when, in fact, it does not.

26.    Defendant Ricardo Cardenas ("Cardenas") has served as a director of Tractor Supply since 2019.  He also has served on the Corporate Governance and Nominating and Audit Committees of the Tractor Supply Board.  In 2019, Cardenas received at least $235,965 in fees and other compensation while failing to act in the best interests of Tractor Supply and its shareholders.  Cardenas publicly misrepresented Tractor Supply as a company that effectively promotes diversity throughout its ranks, including in the boardroom, when, in fact, it does not.

27.    Defendant Ramkumar Krishnan ("Krishnan") has served as a director of Tractor Supply since 2016.  He also has served on the Compensation Committee of the Tractor Supply Board.  In 2019, Krishnan received at least $237,454 in fees and other compensation while failing to act in the best interests of Tractor Supply and its shareholders.  Krishnan publicly misrepresented Tractor Supply as a company that effectively promotes diversity throughout its ranks, including in the boardroom, when, in fact, it does not.

28.    Defendant Edna K. Morris ("Morris") has served as a director of Tractor Supply since 2004.  She also has served on the Corporate Governance and Nominating and Compensation Committees of the Tractor Supply Board.  In 2019, Morris received at least $302,454 in fees and other compensation while failing to act in the best interests of Tractor Supply and its shareholders.

Morris publicly misrepresented Tractor Supply as a company that effectively promotes diversity throughout its ranks, including in the boardroom, when, in fact, it does not.

29.     Defendant George F. MacKenzie Jr. ("MacKenzie") has served as a director of Tractor Supply since 2007.  He also has served on the Compensation and Audit Committees of the Tractor Supply Board.   In 2019, MacKenzie received at least $293,454 in fees and other compensation while failing to act in the best interests of Tractor Supply and its shareholders. MacKenzie publicly misrepresented Tractor Supply as a company that effectively promotes diversity throughout its ranks, including in the boardroom, when, in fact, it does not.

30.     Defendant Denise L. Jackson ("Jackson") has served as a director of Tractor Supply since 2018.   She also has served on the Corporate Governance and Nominating and Audit Committees of the Tractor Supply Board.  In 2019, Jackson received at least $256,954 in fees and other compensation while failing to act in the best interests of Tractor Supply and its shareholders. Jackson publicly misrepresented Tractor Supply as a company that effectively promotes diversity throughout its ranks, including in the boardroom, when, in fact, it does not.

31.     Defendant Mark J. Weikel ("Weikel") has served as a director of Tractor Supply since 2014.  He also has served on the Compensation and Audit Committees of the Tractor Supply Board.  In 2019, Weikel received at least $279,454 in fees and other compensation while failing to act in the best interests of Tractor Supply and its shareholders.  Weikel publicly misrepresented Tractor Supply as a company that effectively promotes diversity throughout its ranks, including in the boardroom, when, in fact, it does not.

32.     Defendant Harry A. Lawton III ("Lawton") has served as a director of Tractor Supply since January 13, 2020.  He also has served as Chief Executive Officer ("CEO") and President of the Company since January 13, 2020.  In 2020, Lawton received at least $2.1 million in cash and a

signing bonus while failing to act in the best interest of Tractor Supply and its shareholders. Lawton publicly misrepresented Tractor Supply as a company that effectively promotes diversity throughout its ranks, including in the boardroom, when, in fact, it does not.

33.     Defendant Peter D. Bewley ("Bewley") served as a director of Tractor Supply from 2011 to 2019. He also served on the Corporate Governance and Nominating and Compensation Committees of the Tractor Supply Board. In 2018 and 2019, Bewley received at least $273,760 in fees and other compensation while failing to act in the best interests of Tractor Supply and its shareholders. Bewley publicly misrepresented Tractor Supply as a company that effectively promotes diversity throughout its ranks, including in the boardroom, when, in fact, it does not.

34.     Defendant Gregory A. Sandfort ("Sandfort") served as a director of Tractor Supply from 2012 to August 2019. He also served as CEO of Tractor Supply from 2012 to January 2020. In 2019, Sandfort received at least $8.6 million in salary, stock awards and other compensation while failing to act in the best interests of Tractor Supply and its shareholders. Sandfort publicly misrepresented Tractor Supply as a company that effectively promotes diversity throughout its ranks, including in the boardroom, when, in fact, it does not.

35.     By reason of their positions as Tractor Supply's directors and/or officers and because of their ability to direct and control the Company's business and corporate affairs, Defendants owed Tractor Supply and its shareholders a fiduciary duty to use their utmost ability to control and manage Tractor Supply in an honest and lawful manner. Toward that end, Tractor Supply's directors and officers owed the Company and its shareholders fiduciary duties to exercise loyalty, good faith, and reasonable supervision over the Company's management, policies, practices, and internal controls. Moreover, Defendants' fiduciary duties required them to, among other things: (i) ensure that Tractor Supply complied with its legal obligations and requirements, including legal compliance with the

corporations and federal securities laws, as well as acting only within the scope of legal authority and disseminating truthful and accurate statements to Tractor Supply shareholders; (ii) conduct the affairs of the Company in an efficient, business-like manner so as to lawfully maximize the value of the corporate enterprise; (iii) ensure that Tractor Supply was operated in a diligent, honest, and prudent manner in compliance with all applicable laws, rules, and regulations, including the corporations and securities laws; and (iv) refrain from breaching their fiduciary duties to Tractor Supply by adopting initiatives, policies, practices, procedures, and controls inconsistent therewith.

## DEFENDANTS' DUTY TO ACT IN THE BEST INTERESTS OF TRACTOR SUPPLY AND ITS SHAREHOLDERS

36. Corporations are one of society's most important institutions. Without profitable corporations, capitalist economies contract, communities fail, and the general welfare suffers. Diversity in the boardroom and throughout a corporate enterprise is a safeguard against these ills.

37. Research corroborates that firms with greater diversity enjoy greater profitability and create more shareholder wealth. As such, building a highly effective, diverse board of directors lies within the very heart of a director's fiduciary duty to maximize corporate value to the fullest extent. Declining to do so is not protected by the business judgment rule.

**Enhancing Shareholder Wealth**
**Is a Director's Fundamental Duty**

38. In early 2016, *The Economist* called shareowner primacy theory "the biggest idea in business," stating "today shareholder value rules business." *Shareholder Value*, *Analyze this*, The Economist (Apr. 2, 2016). The idea is not new, however. As legendary Chicago school economist Milton Freedman succinctly put it in 1962, "corporations have no higher purpose than maximizing profits for their shareholders." Milton Friedman, *Capitalism and Freedom* (1962). More specifically, he stated:

In a free-enterprise, private-property system, a corporate executive is an employee of the owners of the business. He has direct responsibility to his employers. That responsibility is to conduct the business in accordance with their desires, which generally will be to make as much money as possible while conforming to their basic rules of the society, both those embodied in law and those embodied in ethical custom.

Milton Friedman, *The Social Responsibility of Business Is to Increase Its Profits*, N.Y. Times Mag. at 1 (Sept. 13, 1970).

39. Oxford University and Harvard Law School Professors John Armour and Reinier Kraakman described shareholder primacy theory this way in their seminal work *The Anatomy of Corporate Law: A Comparative and Functional Approach*: "[S]hareholder primacy operates to 'assure that the corporation serves the best interests of its shareholders or, more specifically, to maximize financial returns to shareholders or, more specifically still, to maximize the current market price of corporate shares.'" John Armour, et al., *What Is Corporate Law?* in *The Anatomy of Corporate Law: A Comparative and Functional Approach* at 23 (3d ed., Oxford Univ. Press).

40. Delaware embraces shareholder primacy in its corporate law. As former Delaware Supreme Court Chief Justice Leo E. Strine, Jr. wrote:

[A] clear-eyed look at the law of corporations in Delaware reveals that, within the limits of their discretion, directors must make stockholder welfare their sole end, and that other interests may be taken into consideration only as a means of promoting stockholder welfare.

Leo E. Strine, Jr., *The Dangers of Denial: The Need for a Clear-Eyed Understanding of the Power and Accountability Structure Established by the Delaware General Corporate Law*, Univ. of Penn., Inst. for Law & Econ., Research Paper No. 15-08, at 10 (Mar. 11, 2015) ("Strine, *Dangers of Denial*"); *accord Frederick Hsu Living Tr. v. ODN Holding Corp.*, No. 12108-VCL, 2017 WL 1437308, at *18 (Del. Ch. Apr. 24, 2017) ("the fiduciary relationship requires that the directors act prudently, loyally, and in good faith to maximize the value of the corporation over the long-term for the benefit of the providers of presumptively permanent equity capital"); *In re Trados Inc. S'holder*

*Litig.*, 73 A.3d 17, 42 n.16 (Del. Ch. 2013) ("the standard of fiduciary conduct calls for the board to maximize the value of the corporation for the benefit of the common stock"); *eBay Domestic Holdings, Inc. v. Newmark*, 16 A.3d 1, 34 (Del. Ch. 2010) (same).

41.     A director who deviates from shareholder primacy commits a breach of fiduciary duty for which he may be held liable:

> Of course, it is true that the business judgment rule provides directors with wide discretion, and that it enables directors to justify by reference to long run stockholder interests a number of decisions that may in fact be motivated more by a concern for a charity the CEO cares about, or the community in which the corporate headquarters is located, or once in a while, even the company's ordinary workers, than long run stockholder wealth. But that does not alter the reality of what the law is. *Dodge v. Ford* and *eBay* are hornbook law because they make clear that if a fiduciary admits that he is treating an interest other than stockholder wealth as an end in itself, rather than an instrument to stockholder wealth, he is committing a breach of fiduciary duty.

Strine, *Dangers of Denial* at 20.

**Diversity Serves the Best Interests of Shareholders**
**Because It Maximizes Shareholder Wealth**

42.     In 2015, McKinsey, one of the world's largest and most prestigious management consulting firms, first observed a statistically significant connection between diverse leadership and financial performance, finding that "[c]ompanies in the top quartile for racial/ethnic diversity were 35 percent more likely to have financial returns above their national industry median." Vivian Hunt, Dennis Layton & Sara Prince, *Diversity Matters*, McKinsey & Company, at 1 (Feb. 2, 2015) ("*Diversity Matters*"), https://www.mckinsey.com/~/media/mckinsey/business%20functions/organization/our%20insights/why%20diversity%20matters/diversity%20matters.pdf. After examining proprietary datasets for 366 public companies, including financial results and the composition of top management and boards, McKinsey found that "diversity correlates with better financial performance," while the "reverse is also true, companies in the bottom quartile in both gender and ethnicity underperformed the other three quartiles." *Id.* at 3.

- 15 -

43.     Moreover, the 2015 McKinsey report found that companies in the top quartile for gender or racial and ethnic diversity are more likely to have financial returns above their national industry median, while companies in the bottom quartile in these dimensions are statistically less likely to achieve above-average returns:

> The analysis found a statistically significant relationship between a more diverse leadership team and better financial performance. The companies in the top quartile of gender diversity were 15 percent more likely to have financial returns that were above their national industry median. Companies in the top quartile of racial/ethnic diversity were 35 percent more likely to have financial returns above their national industry median. Companies in the bottom quartile for both gender and ethnicity/race were statistically less likely to achieve above-average financial returns than the average companies in the dataset (that is, they were not just not leading, they were lagging). The results varied by country and industry. Companies with 10 percent higher gender and ethnic/racial diversity on management teams and boards in the US, for instance, had EBIT that was 1.1 percent higher; in the UK, companies with the same diversity level had EBIT that was 5.8 percent higher. Moreover, the unequal performance across companies in the same industry and same country implies that diversity is a competitive differentiator that shifts market share towards more diverse companies.

*Id.* at 1.

44.     In 2018, McKinsey updated its research and again found that more diverse firms enjoy greater shareholder returns than less diverse firms, finding that ethnically diverse companies are 35% more likely to financially outperform ethnically homogeneous ones and gender diverse companies are 15% more likely to financially outperform companies lacking gender diversity and social justice practices. Vivian Hunt, Sara Prince, Sundiatu Dixon-Fyle & Lareina Yee, *Delivering through Diversity*, McKinsey & Company, at 8 (Jan. 2018) ("*Delivering through Diversity*"), http://www.insurance.ca.gov/diversity/41-ISDGBD/GBDExternal/upload/McKinseyDeliverDiv201801-2.pdf. As McKinsey explained:

> We first established a positive, statistically significant correlation between executive team diversity and financial performance in our 2015 *Why Diversity Matters* report (using 2014 diversity data). We find this relationship persists in our expanded, updated, and global 2017 data set. In *Why Diversity Matters* we found that companies in the top quartile for gender diversity on their executive teams were

15% more likely to experience above-average profitability than companies in the 4th quartile. Almost exactly three years later, this number rose to 21% and continued to be statistically significant. For ethnic/cultural diversity, the 2014 finding was a 35% likelihood of outperformance, comparable to the 2017 finding of a 33% likelihood of outperformance on EBIT margin, both statistically significant . . . .

*Id.* (footnotes omitted).

45. Addressing boardroom diversity in particular, the 2018 *Delivering through Diversity* report found that "[e]thnic and cultural diversity's correlation with outperformance on profitability was also statistically significant at Board level," making companies with greater ethnic and cultural board diversity 43% more likely to enjoy higher profits. *Id.* at 13. In other words, diversity provides increased shareholder returns, which is in the best interests of the corporation and its shareholders. As McKinsey further explained:

We found that companies with the most ethnically/culturally diverse Boards worldwide are 43% more likely to experience higher profits. We also found a positive correlation between ethnic/cultural diversity and value creation at both the executive team and Board levels, though the relationship is not statistically significant. It may be the case that overall, the picture on top-team diversity globally is more complex due to significant geographic differences in the cultural contexts in which the companies we studied operate.

Overall, our findings that ethnic and cultural diversity on executive teams continues to correlate strongly with company financial performance support the argument that there is value in promoting ethnic/cultural diversity in company top teams around the world. We hypothesize that, for companies, addressing the challenge of building an inclusive company culture across cultural differences could significantly strengthen organizational effectiveness. Further, ethnic/cultural diversity at the highest levels of company leadership could serve as a signal to employees and other stakeholders that the organization truly understands and values the community and customers that they serve.

*Id.*

46. And, in May 2020, McKinsey reported that "[t]he business case for inclusion and diversity (I&D) is stronger than ever," finding that "companies in the top quartile outperformed those in the fourth by 36 percent in terms of profitability in 2019," and that, "[f]or diverse companies, the likelihood of outperforming industry peers on profitability has increased over time,

while the penalties are getting steeper for those lacking diversity." *Diversity wins* at 3-4. As

McKinsey explained:

> *Diversity Wins* is the third in a McKinsey series investigating the business case for diversity, following *Why Diversity Matters* (2015) and *Delivering through Divers*ity (2018). This report shows not only that the business case remains robust, but also that the relationship between diversity on executive teams and the likelihood of financial outperformance is now even stronger than before. These findings are underpinned by our largest data set to date, encompassing 15 countries and more than 1,000 large companies.

> \*       \*       \*

> In the case of ethnic and cultural diversity, the findings are equally compelling. We found that companies in the top quartile outperformed those in the fourth by 36 percent in terms of profitability in 2019, slightly up from 33 percent in 2017 and 35 percent in 2014. And, as we have previously found, there continues to be a higher likelihood of outperformance difference with ethnicity than with gender.

> \*       \*       \*

> This growing polarization between high and low performers is reflected in an increased likelihood of a performance penalty. In 2019, fourth-quartile companies for executive-team gender diversity were 19 percent more likely than companies in the other three quartiles to underperform on profitability. This is up from 15 percent in 2017 and nine percent in 2015. And for companies in the fourth quartile of both gender and ethnic diversity the penalty is even steeper in 2019: they are 27 percent more likely to underperform on profitability than all other companies in our data set.

*Id*. (footnote omitted).

47.     These consistent findings demonstrate that firms with greater diversity outperform

their peers by a significant margin. Diversity is in the best interests of a corporation and its

shareholders. Tractor Supply recognizes this – at least on paper. "Diversity and inclusion play a key

role in moving our business forward" and are "essential to our success." *Diversity and Inclusion*

*Statement*,     Tractor     Supply,     https://corporate.tractorsupply.com/ESG/diversity-and-

inclusion/default.aspx (last visited Sept. 15, 2020). In practice, however, this appears to be only lip-

service, as Tractor Supply remains one of the few large publicly traded companies domiciled in the

United States without a single male or female African American director.

**HUNDREDS OF MILLIONS IN POTENTIAL**
**SHAREHOLDER WEALTH SQUANDERED**

48.     Based in Brentwood, Tennessee, Tractor Supply is one of the largest rural lifestyle retailers in the United States.  The Company operates more than 1,850 Tractor Supply stores in 49 states and an e-commerce website, offering a wide mix of products for the care of the home, land, pets and animals to recreational farmers, ranchers and other persons who enjoy living the rural lifestyle.  *Company Overview*, Tractor Supply, https://corporate.tractorsupply.com/company-overview/company-profile/default.aspx (last visited Sept. 15, 2020).

**The Tractor Supply Board of Directors**

49.     The lack of racial diversity at the top at Tractor Supply is significant.  Tractor Supply enjoys the dubious distinction of being one of only a handful of large publicly traded companies in the United States without an African American director.  The members of the 2020 Tractor Supply Board are:



**Defendants' False Statements About the Company's
Commitment to Promoting Racial Diversity at the Top**

50.     Privately, Defendants have repeatedly declined the opportunity to appoint African

American men or women to Tractor Supply's Board.  Publicly, however, Defendants, in pursuit of

the accolades and awards that affirm true diversity leadership, have falsely portrayed Tractor Supply

as a leader in diversity and inclusion and as a company that effectively promotes and achieves diversity across its enterprise, including at the top.

**False Statements About Racial Diversity
on Tractor Supply's Website**

51.     For example, Tractor Supply's website not only recognizes diversity to be a key to success, but also highlights the Company's efforts to hasten diverse talent acquisition across the enterprise:

> ***We are committed to providing a diverse and inclusive culture*** supported by our Mission & Values where we respectfully foster different perspectives, ideas and innovative thinking. ***We know that we are stronger together***, and we believe in the authenticity our Team Members bring to work every day. . . . ***Diversity and inclusion play a key role in moving our business forward***.

*Diversity and Inclusion Statement*, Tractor Supply, https://corporate.tractorsupply.com/ESG/diversity-and-inclusion/default.aspx (last visited Sept. 15, 2020).

52.     Tractor Supply's website also highlights the Company's programs and initiatives for achieving diversity:

> **Diversity and Inclusion Statement**
>
> "At Tractor Supply, our deep-rooted culture of Mission & Values is unique and is the foundation of our success. We are committed to providing a diverse and inclusive culture where we foster different perspectives, ideas and innovative thinking. One of our values is respect – the starting point for our diversity and inclusion efforts."
>
> – Hal Lawton, President and CEO
>
>                      \*       \*       \*
>
> **Our diversity and inclusion programs and initiatives are focused around four areas:**
>
> > **Team Members:** Attract, engage, develop & retain Team Members with backgrounds that reflect the diversity of our communities and customers.

*Id.*

53.     Extolling the benefits of diversity at Tractor Supply, the Company's website further states:

> *Diversity and inclusion are the backbone of a vibrant workforce and essential to our success*. . . .  This is a journey, and we are constantly pushing to make sure our workplace is reflective of our diverse group of Team Members and customers.

> *        *        *

> "As board members, we are deeply engaged with the oversight of the Company's ESG issues*, including being champions for diversity and equality and long-term value creation*."

*Id.*; Press Release, Tractor Supply, *Tractor Supply Issues Inaugural Environmental, Social and Governance (ESG) Report* (June 25, 2020) (quoting Cynthia T. Jamison).

**False Statements About Racial Diversity**
**in the Company's Proxy Statements**

54.     Additionally, Defendants falsified the Company's official SEC filings.  In particular, while under the stewardship of Defendants, the Company's Proxy Statements repeatedly misrepresented that Tractor Supply effectively promotes and achieves inclusion and diversity, including in the boardroom.  "***The Board of Directors of Tractor Supply Company is committed to the principles of diversity and inclusion***."  2020 Proxy Statement at 19.

55.     For example, with respect to the nomination of directors, Defendants stated that, when evaluating prospective nominees for Tractor Supply's Board, the Corporate Governance and Nominating Committee "considers diversity, such as diversity of gender [and] race."  2020 Proxy Statement at 18.  More specifically, they stated:

> The Corporate Governance Committee also ***considers diversity, such as diversity of gender, race*** and national origin, [age,] education, professional experience, and differences in viewpoints and skills.  ***The Corporate Governance Committee is committed to actively seeking highly qualified*** women and ***individuals from minority groups to include in the pool from which Board nominees are selected***.  The Board and the Corporate Governance Committee believe that it is important that the Board members represent ***diverse viewpoints***.  In considering candidates for the Board, the Corporate Governance Committee considers the

entirety of each candidate's credentials in the context of these standards. With respect to the nomination of continuing directors for re-election, the individual's contributions to the Board are also considered.

2020 Proxy Statement at 18; 2019 Proxy Statement at 16-17.

56.     Tractor Supply's 2019 Proxy Statement makes similar representations, stating that the Company effectively promotes and achieves diverse perspectives. For example, in Tractor Supply's 2019 Proxy Statement, Defendants stated that "[t]he Board and the Corporate Governance Committee believe that it is important that directors represent diverse viewpoints and individual perspectives" and, therefore, they "consider[] diversity, such as diversity of gender, race and national origin." 2019 Proxy Statement at 4. They further stated:

> ***Diversity and inclusion are values ingrained in our culture and essential to our business***. We believe that a board comprised of directors with diverse backgrounds, unique skill sets and experiences, and individual perspectives improves the discussions and decision-making process which contributes to overall Board effectiveness.

*     *     *

> ***The Corporate Governance Committee also considers diversity, such as diversity of gender, race*** and national origin, education, professional experience and differences in viewpoints and skills. The Corporate Governance Committee ***is committed to actively seeking highly qualified*** women and ***individuals from minority groups*** to include in the pool from which Board nominees are selected.

2019 Proxy Statement at 5, 16.

**The Statements About Tractor Supply's Commitment to
Racial Diversity at the Top Were Knowingly False**

57.     While many of Tractor Supply's competitors have at least one African American on their boards of directors, including companies such as Dick's Sporting Goods, Foot Locker, AutoZone, Lowes, Dollar Tree, and Dollar General, in 2020, Tractor Supply still does not have a single African American man or woman on its Board.

58. Instead of pursuing racial diversity on the Board and elsewhere within the Company, Defendants have not only made, or caused Tractor Supply to make, false or misleading statements about Tractor Supply's commitment to diversity, they have also approved false or misleading statements that Tractor Supply has been successful in those efforts. For example, the Company filed its 2020 Proxy Statement with the SEC on March 23, 2020, after it was approved by Defendants Jamison, Cardenas, Jackson, Kingsbury, Lawton, Krishnan, MacKenzie, Morris, and Weikel. And the Company filed its 2019 Proxy Statement with the SEC on March 25, 2019, after it was approved by Defendants Jamison, Cardenas, Jackson, Kingsbury, Krishnan, MacKenzie, Morris, Sandfort and Weikel. The 2020 and 2019 Proxy Statements' use of the phrase "diversity of . . . race" is misleading because the Proxy Statements suggest that the Tractor Supply Board has a goal of achieving actual racial diversity on the Board by seeking to achieve representation of diverse persons. 2020 Proxy Statement at 18; 2019 Proxy Statement at 4. In reality, however, Defendants have perpetuated practices and procedures that do not allow for increased racial diversity among candidates for Board seats.

59. Moreover, the representation in the 2020 and 2019 Proxy Statements that, when evaluating a candidate for membership on the Tractor Supply Board, the Corporate Governance and Nominating Committee "is committed to actively seeking highly qualified women and individuals from minority groups to include in the pool from which Board nominees are selected" for nomination to Tractor Supply's Board is misleading because a reasonable reading of that language conveys that the Company is actively seeking to achieve racial diversity on its Board. 2020 Proxy Statement at 18; 2019 Proxy Statement at 16. Despite emphasizing "diversity of . . . race" as an important factor in achieving a diverse board, the fact remains that Tractor Supply currently has no African American Board members. The undisclosed truth is, therefore, that while Tractor Supply

may maintain a policy stating it is attempting to bring racially diverse candidates into its director nominee pool, it has declined to actually nominate any such persons to its Board and/or is engaged in an effort to thwart the nomination of such persons, including African Americans.

**The Corporate Governance and Nominating Committee's**
**Role in Keeping African Americans Off the Board**

60.     The Charter of the Corporate Governance and Nominating Committee states that the Committee "is responsible for assisting the Board in the discharge of its responsibilities relating to the nomination of directors and the provision of oversight on all matters relating to the corporate governance of the Company and any other related matters required by the federal securities laws." Tractor Supply Company Corporate Governance and Nominating Committee Charter at 1.  At all relevant times, directors Cardenas, Bewley, Jackson, Kingsbury, Krishnan, and Morris served on the Tractor Supply Board's Corporate Governance and Nominating Committee.  2020 Proxy Statement at 15.

61.     As to "Board Diversity," the 2020 Proxy Statement states that "[d]iversity and inclusion are . . . essential to our business" and "a board comprised of directors with diverse backgrounds . . . improves the discussions and decision-making process which contributes to overall Board effectiveness."  2020 Proxy Statement at 6.  Towards this end, when evaluating candidates for nomination as directors, the 2020 Proxy Statement states the Corporate Governance and Nominating Committee "considers diversity, such as diversity of . . . race" and "is committed to actively seeking highly qualified women and individuals from minority groups to include in the pool from which Board nominees are selected" for nomination to Tractor Supply's Board.  2020 Proxy Statement at 18.

62.     These statements were designed to, and did, convey to Tractor Supply shareholders that Tractor Supply actively promotes racial diversity at all levels of the Company.  In reality,

Defendants have failed to do so. Instead, Tractor Supply has the dubious distinction of being one of the few remaining large publicly traded companies in 2020 without a single male or female African American director.

63. This lack of board-level diversity has contributed to economic disparities at Tractor Supply. For example, as recently as 2018 and 2019, the Company's CEO pay was more than 300 times as high as the median pay of all other employees. 2019 Proxy Statement at 42; 2020 Proxy Statement at 47. As reflected by Tractor Supply's CEO pay ratios, the absence of significant performance metrics based on achievements in diversity in executive compensation plans can spur economic disparities across an enterprise.

64. Leading Fortune 500 companies and top business schools have tied executive pay to a myriad of business goals, like revenues, profits, share price, and talent acquisition. For example, "[a]chieving diversity goals helps determine one-sixth of the cash bonus of Microsoft's chief executive, Satya Nadella," while at Uber, "[d]iversity targets are embedded in the stock compensation of its chief executive, Dara Khosrowshahi, accounting for a fourth of his performance-based stock awards." Peter Eavis, *Want More Diversity? Some Experts Say Reward C.E.O.s for It*, N.Y. Times, July 14, 2020. As *The New York* Times reported: "Making diversity targets part of compensation and disclosing them would not just give top executives a financial incentive to hire and promote more Black and Latino people, but also provide a public scorecard that employees and shareholders could use to determine whether companies were following through on their commitments." *Id.*

65. Defendants have declined to link CEO pay to diversity, notwithstanding the fact that financial disincentives to recruit, hire, promote and retain African Americans at senior levels at Tractor Supply, including in the boardroom, have harmed, and continue to harm, the Company and

its shareholders by, among other things, adversely impacting shareholder value. Instead of acknowledging the problem and demanding change, Defendants have instead issued false statements claiming success in achieving diversity and inclusion in the face of this enormous wealth gap.

**Defendants Have Enriched Themselves at the Expense of**
**Tractor Supply's Shareholders by Making Misleading Statements**
**About Tractor Supply's Commitment to Racial Diversity at the Top**

66. In addition to denying Tractor Supply the substantial increases in shareholder value enjoyed by companies with greater board diversity, by entrenching themselves on Tractor Supply's Board, Defendants have benefited financially by paying themselves millions of dollars in cash and stock awards each year. *See Delivering through Diversity* at 13 ("We found that companies with the most ethnically/culturally diverse Boards worldwide are 43% more likely to experience higher profits.").

67. Tractor Supply's 2020 Proxy Statement states that "[t]he Board of Directors of Tractor Supply Company is committed to the principles of diversity and inclusion." 2020 Proxy Statement at 19. More specifically, with regard to the criteria for the selection of directors, the 2020 and 2019 Proxy Statements represent:

> The Corporate Governance Committee also considers diversity, such as diversity of gender, race and national origin, [age,] education, professional experience and differences in viewpoints and skills. The Corporate Governance Committee is committed to actively seeking highly qualified women and individuals from minority groups to include in the pool from which Board nominees are selected. The Board and the Corporate Governance Committee believe that it is important that the Board members represent diverse viewpoints.

2020 Proxy Statement at 18; 2019 Proxy Statement at 16.

68. But rather than uphold Tractor Supply's commitment to diversity at all levels of the Company, Defendants chose instead to perpetuate Tractor Supply's practice of excluding African American directors. Consequently, many qualified African American candidates who would have allowed Tractor Supply and its shareholders to benefit from racial diversity on the Tractor Supply

Board have been excluded. Conversely, by retaining their seats on the Tractor Supply Board, Defendants have profited handsomely, collectively pocketing over $2.2 million in fees, stock awards and other compensation in 2019 alone:

| Name | Fees Earned or Paid in Cash | | Stock Awards | | All Other Compensation | | Total |
|---|---|---|---|---|---|---|---|
| Peter D. Bewley | $ 38,764 | $ | — | $ | — | $ 38,764 |
| Ricardo Cardenas | $ 96,011 | $ | 139,954 | $ | — | $ 235,965 |
| Denise L. Jackson | $ 117,000 | $ | 139,954 | $ | — | $ 256,954 |
| Cynthia T. Jamison | $ 170,536 | $ | 199,906 | $ | — | $ 370,442 |
| Thomas A. Kingsbury | $ 105,000 | $ | 139,954 | $ | — | $ 244,954 |
| Ramkumar Krishnan | $ 97,500 | $ | 139,954 | $ | — | $ 237,454 |
| George MacKenzie | $ 153,500 | $ | 139,954 | $ | — | $ 293,454 |
| Edna K. Morris | $ 162,500 | $ | 139,954 | $ | — | $ 302,454 |
| Mark J. Weikel | $ 139,500 | $ | 139,954 | $ | — | $ 279,454 |

2020 Proxy Statement at 13 (footnotes omitted).

**Minority-Majority Demographic Shifts Urgently Call for Greater Board-Level Diversity**

69. America is in the midst of well-documented minority-majority demographic shifts. These shifts in American culture and commerce, and their attendant challenges – and potential perils – underscore the urgency for racial diversity on corporate boards of directors.

70. As *Axios* reported on April 29, 2019, "[b]y 2045, the U.S. as a whole is projected to become majority minority. And the changes are already underway: non-white Americans are now the majority of the population in four states, as well as in the most prosperous and powerful U.S. cities." Stef W. Kight, *America's minority majority future*, Axios (Apr. 29, 2019), https://www.axios.com/when-american-minorities-become-the-majority-d8b3ee00-e4f3-4993-8481-93a290fdb057.html.

71. For companies unable to adapt, this shift is a potentially existential threat, as *Fast Company* reported on January 27, 2020:

> Many companies and executives have repeatedly pledged their commitment to diversity and inclusion efforts, often with little to show for it. Soon they'll have no choice but to act.

*     *     *

> "If there's an unwillingness to revamp the culture to meet the needs and desires of this changing workforce, then those companies are going to be left behind . . . . Talent is going to shift over to a lot of these smaller, more disruptive, more nimble companies."

Pavithra Mohan, *How the end of the white majority could change office dynamics in 2040*, Fast Company (Jan. 27, 2020), https://www.fastcompany.com/90450018/how-the-end-of-the-white-majority-could-change-office-dynamics-in-2040.

72. The demographic shifts currently underway are impacting, and will continue to impact, America's publicly traded corporations. If these vital engines of American economic growth cannot adjust, these shifts may become existential threats to their ability to continue as going concerns.

73. Racially diverse directors and executives reflect these changes, and their diverse backgrounds, experiences, perspectives, and skills can help corporate boards of directors successfully navigate the minority-majority changeover. Despite the multi-fold benefits to the Company and its shareholders, Defendants have opted to effectively exclude African Americans from the Tractor Supply Board. In doing so, they have breached their fiduciary duty to act in the best interests of Tractor Supply and its shareholders.

## DERIVATIVE ALLEGATIONS

74. Plaintiff incorporates ¶¶1-73.

75.     Plaintiff brings this action for the benefit of Tractor Supply to redress injuries suffered, and to be suffered, by Tractor Supply due to Defendants' breaches of fiduciary duty and violations of law.  Plaintiff will adequately and fairly represent the interests of Tractor Supply in enforcing and prosecuting these derivative claims.  Tractor Supply is named as a nominal party in this action.  This is not a collusive action to confer jurisdiction on this Court that it would otherwise lack.

76.     Tractor Supply's Board has nine members – Defendants Cardenas, Jackson, Jamison, Kingsbury, Lawton, Krishnan, MacKenzie, Morris, and Weikel.

77.     Defendants' failure to nominate a single African American to Tractor Supply's Board, despite their stated objective to achieve a racially diverse Board, exposes the falsity of Defendants' public assertion that they are "committed to the principles of diversity and inclusion," are "actively seeking highly qualified women and individuals from minority groups to include in the pool from which Board nominees are selected," and are "'champions for diversity and equality and long-term value creation.'"  2020 Proxy Statement at 18, 19; Press Release, Tractor Supply, *Tractor Supply Issues Inaugural Environmental, Social and Governance (ESG) Report* (June 25, 2020) (quoting Cynthia T. Jamison).

78.     Defendants' serialized inability to nominate any African American men or women to Tractor Supply's Board, despite up to 45 opportunities to achieve this key diversity objective, is antithetical to their fiduciary duty to act in the best interests of the Company and its shareholders. Given this, there is ample reason to doubt Defendants' capacity to distance themselves from the allegations enough to perform a disinterested, impartial and objective evaluation of a pre-suit demand.  Therefore, a pre-suit demand on the Tractor Supply Board to commence this action is excused as futile.

79.     African American men and women are proven leaders in every segment of society, including, the academy, the armed forces, business, industry, law, healthcare, science, and technology.  Yet today, in 2020, there are no African Americans on Tractor Supply's Board.  This despite Defendants' public proclamations about Tractor Supply's commitment to "actively seeking highly qualified . . . individuals from minority groups to include in the pool from which Board nominees are selected," because "directors with diverse backgrounds, unique skill sets and experiences, and individual perspectives improves the discussions and decision-making process which contributes to overall Board effectiveness."  2020 Proxy Statement at 6, 18.

80.     This failure is not due to a shortage of qualified male or female African American director candidates.  Rather, it is because Defendants' effort (or will) is not consistent with the Company's public statements and because of a failure to speak candidly about actually achieving racial diversity on Tractor Supply's Board.  The combination of these two factors amounts to a breach of Defendants' fiduciary duty to act in the best interests of Tractor Supply and its shareholders.

81.     At Tractor Supply, the members of the Board serve for a period of one year at a time.  Thus, during the five-year period between 2015 and 2020, Defendants had up to 45 unique opportunities to nominate an African American candidate for the Tractor Supply Board.  Defendants declined to do so each and every time.  As a result, in 2020, no African American men and/or women serve on the Tractor Supply Board.

82.     That chance spoiled so many opportunities for an African American Tractor Supply director strains credulity.  Especially since, during this same time period, the Company's shareholder reports and website postings reveal that Defendants made, or caused Tractor Supply to make, public

statements affirming their commitment to diversity at the top and holding Tractor Supply out as a company that actively promotes and achieves measurable diversity objectives.

83.     For example, in Tractor Supply's 2020 Proxy Statement, Defendants confirmed that the "[t]he Board considers diversity, such as diversity of gender, race and national origin, education, professional experience and differences in viewpoints and skill sets," because Defendants "believe that it is important that directors represent diverse viewpoints and individual perspectives." 2020 Proxy Statement at 5.

84.     Towards this end, Tractor Supply's Proxy Statements state "[t]he Corporate Governance Committee is committed to actively seeking highly qualified women and individuals from minority groups to include in the pool from which Board nominees are selected" for nomination to Tractor Supply's Board. 2020 Proxy Statement at 18; 2019 Proxy Statement at 16. Yet, in 2020, there is not a single African American on the Tractor Supply Board.

85.     A director must speak the entire truth whenever he or she undertakes to say anything on behalf of the corporation. A director likewise must act consistent with the corporation's stated initiatives, policies and programs designed to promote diversity and inclusion at the corporation. Here, the overall misleading nature or falsity of Defendants' statements that Tractor Supply's Board believes that a diverse boardroom is important is exposed by the fact that Tractor Supply has no African Americans on its Board.

86.     The business judgment rule is not a litigation bar to Defendants' substantial liability for false statements about their own and Tractor Supply's commitment to diversity. On the contrary, Defendants' false statements affirming diversity when, in fact, they have privately not done so has harmed shareholder wealth creation at Tractor Supply.

87.     Judicial officers across the country are examining their historical practices, policies and procedures for unconscious bias that may unfairly discriminate against historically underrepresented people of color or that may support historical systems of racism.  *See, e.g.*, Mike Scarcella, '*Our Moral Imperative': Washington State Justices Issue Open Letter Confronting Racial Injustice*, Nat. L. J. (June 5, 2020), https://www.law.com/nationallawjournal/2020/06/05/our-moral-imperative-washington-state-justices-issue-open-letter-confronting-racial-injustice/; *State court statements on racial justice*, Nat. Center for State Courts (2020), https://www.ncsc.org/newsroom/state-court-statements-on-racial-justice (last visited Sept. 16, 2020) (collecting statements on racial justice issued by the chief justices or similar leaders of over 20 state judicial systems and the District of Columbia); Tennessee Supreme Court Access to Justice Commission: 2018-2020 Strategic Plan: 2020 Update at 3; https://www.tncourts.gov/sites/default/files/docs/2020_atjc_strategic_plan.pdf.

88.     The business judgment rule should not escape similar scrutiny.  Especially in an action, as here, seeking to hold Defendants' accountable for the absence of any male or female African American directors on the Company's Board, despite Defendants' public proclamations that, when considering director candidates, the Board believes it is important to identify "individuals from minority groups to include in the pool from which Board nominees are selected."  2020 Proxy Statement at 18; 2019 Proxy Statement at 16.

89.     Commentators and experts on diversity and inclusion agree.  "Proclamations about racial inequality and injustice are only the beginning.  This must be followed by consistent efforts and actions that are measurable and demonstrable.  Corporations that advocate for equality and justice should at the very least have a boardroom that demonstrates this."  Patricia Lenkov, *Beyond Commitment: Improving Black Leadership In Corporate America*, Forbes (June 7, 2020),

https://www.forbes.com/sites/patricialenkov/2020/06/07/beyond-commitment-improving-black-leadership-in-corporate-america/#4dd729ec257d.

90.     Defendants' dereliction of their fiduciary duties to speak honestly about Tractor Supply's commitment to diversity and maximize corporate value is not in the best interests of the Company and its shareholders. Given the gravity of the claims, there is ample reason to doubt that Defendants can adequately detach themselves from not just the facts alleged, but also from the financial, social and reputational dynamics at play, to fairly consider a pre-suit demand. Without full confidence in Defendants' ability, individually and collectively, to evaluate a pre-suit demand with disinterest, impartiality and objectivity, and without concern for any personal considerations, financial or otherwise, a pre-suit demand on the Tractor Supply Board to commence this action is excused as futile.

91.     Plaintiff has not made any demand on Tractor Supply shareholders to institute this action, since such demand would be a futile and useless act for the several reasons. First, Tractor Supply is a publicly traded company with more than 116 million shares outstanding held by tens of thousands of individuals and entities spread throughout the country. Second, making demand on such a number of shareholders spread throughout the country would be impossible for plaintiff who has no way of finding out the names, addresses, or phone numbers of shareholders. Third, making demand on all shareholders would force plaintiff to incur significant expenses, assuming all shareholders could be individually identified.

### COUNT I

**Against All Defendants for Violation of §14(a)**
**of the Exchange Act and SEC Rule 14a-9**

92.     Plaintiff incorporates ¶¶1- 91.

93. Rule 14a-9, promulgated pursuant to §14(a) of the Exchange Act, provides that no proxy statement shall contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. §240.14a-9(a).

94. The 2020 and 2019 Proxy Statements violated §14(a) and Rule 14a-9 because they omitted material facts, including the fact that Defendants were causing Tractor Supply to publicly feign support for diversity and inclusion at all levels of the Company, including feigning support for director candidates from minority groups to serve on Tractor Supply's Board. Defendants were not committed to true diversity throughout Tractor Supply's ranks, including in the boardroom – facts that Defendants were aware of and participated in as set forth herein.

95. Defendants had actual knowledge of their omissions of material fact or acted with reckless disregard for the truth in failing to ascertain and disclose such facts even though such facts were available to them.

96. The misrepresentations and omissions in the 2020 and 2019 Proxy Statements were material to plaintiff and would be material to reasonable investors who voted on each Proxy Statement. The 2020 and 2019 Proxy Statements were an essential link in Tractor Supply shareholders following the Company's recommendation to re-elect the Defendants to the Tractor Supply Board and approve the executive pay packages, as revelations of the truth would have immediately thwarted a continuation of the shareholders' endorsement of the directors' positions and the executive officers' compensation.

97. The Company was damaged as a result of the material misrepresentations and omissions in the Proxy Statements.

## COUNT II

### Against All Defendants for Breach of Fiduciary Duty

98.     Plaintiff incorporates ¶¶1- 91.

99.     Defendants owed and owe Tractor Supply fiduciary obligations.  By reason of their fiduciary relationships, Defendants owed and owe Tractor Supply the highest obligation of loyalty, good faith, due care, oversight, and candor.

100.    Defendants violated and breached their fiduciary duties of loyalty, good faith, due care, oversight, and candor.

101.    Specifically, each of the Defendants, in breach of their fiduciary duties of care, loyalty and good faith, intentionally or recklessly caused the Company to disseminate to Tractor Supply shareholders materially misleading and inaccurate information through, among other things, the SEC filings and other public statements and disclosures as detailed herein.  Defendants had actual knowledge of their misrepresentations and omissions of material fact or acted with reckless disregard for the truth in failing to ascertain and disclose such facts even though such facts were available to them.

102.    As a direct and proximate result of Defendants' conscious failure to perform their fiduciary obligations, Tractor Supply has sustained significant damages.  As a result of the misconduct alleged herein, Defendants are liable to the Company.  Defendants breached their fiduciary duties owed to Tractor Supply and its shareholders by willfully, consciously, and/or intentionally failing to perform their fiduciary duties to act in the best interests of Tractor Supply and its shareholders to maximize corporate value.

## COUNT III

### Against All Defendants for Unjust Enrichment

103.    Plaintiff incorporates ¶¶1-91.

104.    By their wrongful acts and omissions, Defendants were unjustly enriched at the expense of and to the detriment of Tractor Supply.  Defendants were unjustly enriched by their receipt of compensation while breaching fiduciary duties owed to Tractor Supply.

105.    Plaintiff, as a representative of the Company, seeks restitution from Defendants and seeks an order of this Court disgorging all profits, benefits, and other compensation obtained by Defendants, and each of them, as a result of their wrongful conduct and fiduciary breaches.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff prays for relief and judgment as follows:

A.    Awarding money damages against all Defendants, jointly and severally, for all damages, injuries, and losses suffered, and to be suffered, as a result of the acts and transactions complained of herein, together with pre-judgment interest, to ensure that Defendants do not participate therein or benefit thereby;

B.    Directing all Defendants to account for all damages caused by them and all profits, special benefits, and unjust enrichment they have obtained as a result of their unlawful conduct, including all salaries, bonuses, fees, and insider sales proceeds, and imposing a constructive trust thereon;

C.    Directing Tractor Supply to take all necessary actions to remove the institutional structures preventing the Company from achieving its stated diversity objectives, including, but not limited to, adopting, implementing and maintaining the following initiatives, policies and procedures designed to promote greater racial diversity, equity and inclusion:

(i)    Nominate three new persons to serve on the Tractor Supply Board, which candidates shall include three African Americans to replace three current Tractor Supply directors;

(ii)    Invest $80 million in economic and social justice programs for the African American community designed to address historical racial disparities;

(iii)     Fill 15% of all new positions in the United States with African Americans;

(iv)     Finance 100 education scholarships valued at $100,000 each for K-12 African American students annually at partner schools located in the communities in which the Company does business;

(v)     Invest in the Company's talent pipeline by creating and/or expanding connections with Historically Black Colleges and Universities located in the United States;

(vi)     Give diversity, equity and inclusion sustained C-suite support by shifting from preventative measures, such as anti-bias training, to proactive ones, such as increasing the number of African American candidates considered for open positions and rewarding the people who contribute to the Company's success;

(vii)     Develop a program to ensure fair and equitable hiring across the Company – to remove hiring bias, increase representation of African Americans within senior corporate leadership, management and supervisory ranks, and create more board-level accountability and oversight for the advancement of diversity and inclusion practices and systems within the Company;

(viii)     Provide managers the skills they need to support diversity, equity and inclusion efforts; and

(ix)     Create a public facing dashboard reporting the Company's progress, which shall identify, among other things:

(1)     the representation of African American women in the United States at the vice president and above level;

(2)     the representation of African Americans in the United States at the vice president and above level;

(3)      the representation of African American men and women on the Tractor Supply Board;

(4)      the percentage of Tractor Supply's workforce actively engaged in promoting the Company's diversity, equity and inclusion efforts; and

(5)      the names of the African American-owned businesses located in the United States the Company has partnered with during the fiscal year;

D.      Awarding punitive damages;

E.      Awarding costs and disbursements of this action, including reasonable attorneys' and experts' fees; and

F.      Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury.

DATED:  October 9, 2020                    ROBBINS GELLER RUDMAN
                                                          & DOWD LLP
                                                       CHRISTOPHER M. WOOD, #032977


                                                       _s/ Christopher M. Wood_
                                                       CHRISTOPHER M. WOOD

                                                       414 Union Street, Suite 900
                                                       Nashville, TN  37219
                                                       Telephone:  615/244-2203
                                                       615/252-3798 (fax)
                                                       cwood@rgrdlaw.com

BARRETT JOHNSTON MARTIN
  & GARRISON, LLC
JERRY E. MARTIN, #20193
Bank of America Plaza
414 Union Street, Suite 900
Nashville, TN 37219
Telephone: 615/244-2202
615/252-3798 (fax)
jmartin@barrettjohnston.com

ROBBINS GELLER RUDMAN
  & DOWD LLP
DARREN J. ROBBINS
BENNY C. GOODMAN III
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)
darrenr@rgrdlaw.com
bgoodman@rgrdlaw.com

ROBBINS GELLER RUDMAN
  & DOWD LLP
SHAWN A. WILLIAMS
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA 94104
Telephone: 415/288-4545
415/288-4534 (fax)
shawnw@rgrdlaw.com

Attorneys for Plaintiff

ASHERKELLY
MATTHEW I. HENZI
25800 Northwestern Highway, Suite 1100
Southfield, MI 48075
Telephone: 248/746-2710
248/747-2809 (fax)
mhenzi@asherkellylaw.com

Additional Counsel for Plaintiff

## VERIFICATION

I, Christopher M. Wood, hereby declare the following:

1. I am one of the attorneys for Plaintiff. This verification is based upon my personal knowledge and I could competently testify to the statements contained herein if called upon as a witness.

2. I have knowledge of the facts alleged in the Verified Shareholder Derivative Complaint for Violations of the Federal Securities Laws, Breach of Fiduciary Duty and Unjust Enrichment and I believe them to be true to the best of my information and belief.

3. I make this verification because Plaintiff is absent from the City of Nashville where I maintain my office.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 9th day of October, 2020, at Nashville, Tennessee.

_____
CHRISTOPHER M. WOOD